# Richmond

## SOUTHERN RAILWAY COMPANY v. JACOBS

March 12, 1914.

Absent, Cardwell, J.

1. INTERSTATE COMMERCE—*Railroads—Federal Employers' Liability Laws.*—Although an employee of an interstate railroad was, at the instant of injury, engaged on a local yard in shifting cars engaged in intrastate commerce, if the shifting and move-ment of the cars at the time had for its object the making up of an interstate train, the employee was engaging in inter-state commerce within the meaning of the Federal Employ-ers' Liability Law.

2. MASTER AND SERVANT — *Injury to Servant — Railroads — Negli-gence.*—Whether a cinder pile alongside the track of a rail-road, allowed to accumulate by the company, is a defect due to the negligence of the company resulting in an injury to a ser-vant of the company is a question of fact for the jury under proper instructions from the court.

3. INTERSTATE COMMERCE—*Constitutional Law—Powers of Congress—Federal Employers' Liability Laws.* — The Congress of the United States had the power, under the commerce clause of the Federal Constitution (regulating the liability of inter-state carriers by railroads to their employees, while so em-ployed) to pass the Federal Employers' Liability Laws, and having exerted that power its action is paramount and ex-clusive, and supersedes all legislation over the same subject by the States.

4. MASTER AND SERVANT—*Assumption of Risk—Contributory Negli-gence.*—"Assumption of risk" is a doctrine wholly distinguish-able from that of "contributory negligence," which is a breach of a legal duty imposed by law upon the servant, however un-willing or protesting he may be, while assumption of risk is not a duty, but is merely voluntary on the part of the servant.

5. MASTER AND SERVANT—*Assumption of Risk—Federal Employers' Liability Laws.*—The doctrine of "assumption of risk" is not abolished by the Federal Employers' Liability Laws, except in

the single case where the violation by the common carrier of
any statute enacted for the safety of employees contributes to
the injury or death of such employee.

Error to a judgment of the Circuit Court of Bruns-
wick county in an action of trespass on the case.   Judg-
ment for the plaintiff.   Defendant assigns error.

*Reversed.*

The opinion states the case.

*Williams, Tunstall & Thom,* for the plaintiff in error.

*Buford, Lewis & Peterson,* for the defendant in error.

Keith, P., delivered the opinion of the court.

This suit was brought under the act of Congress, ap-
proved April 22, 1908, known as the "Employers' Lia-
bility Act," to recover of the Southern Railway Com-
pany damages for injuries sustained by the plaintiff
while in the service of the company as fireman on a
freight train running between Lawrenceville and Pin-
ner's Point, Va.   There was a verdict and judgment for
the plaintiff, to which a writ of error was awarded.

The declaration shows that the defendant was, at the
time of the injuries complained of, a common carrier en-
gaged in interstate commerce; that the plaintiff was em-
ployed by the defendant in that commerce; and that the
railway company permitted a pile of cinders to accumu-
late alongside its track and roadbed at Lawrenceville,
which constituted a defect or insufficiency, due to its neg-
ligence, in its track or roadbed, which brings the case
within the purview of the first section of the act of Con-
gress above referred to.

Three questions of interest are presented for decision

by the record. *First:* Was the plaintiff in error, at the time of the injury, engaged in commerce between the States, and was the defendant in error a person employed by the plaintiff in error in such commerce, within the purview of the act of Congress? *Second:* Did the cinder pile alongside the tracks of the company in its yard at Lawrenceville constitute a defect or insufficiency due to its negligence in its track or roadbed, from which the injury to the defendant in error resulted, in whole or in part? *Third:* Is the plaintiff in error entitled, under the act of Congress, to avail itself of the common law defense which defeated recovery if the defendant in error was chargeable with actual or constructive knowledge of the negligence of the plaintiff in error in creating the defect or insufficiency in its track or roadbed?

It is true that at the precise moment of the injury Jacobs, the man who was injured, was engaged with a crew in shifting cars in the yard at Lawrenceville, and the particular cars which were attached to the engine at the moment of the accident were engaged in intrastate, as contradistinguished from interstate, commerce, and did not come from any point beyond the limits of the State, and were destined to points within the State; but it is also true that the shifting and movement of the cars at the time had for its object the making up of a train to which cars were to be attached which came from points beyond the southern limits of the State and were destined to points beyond the northern limits of the State, by way of Norfolk, and were laden with interstate shipments; and these facts, we think, bring the case fairly within the influence of *Pederson* v. *Delaware, Lackawanna & W. R. Co.*, 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, and the circuit court committed no error in so deciding.

Nor have we any difficulty in holding that, under the

circumstances, the cinder pile alongside the tracks of the company constituted a defect due to the negligence of the company, from which the injury to the appellee resulted, and was a question of fact for the jury upon proper instructions. And this brings us to the interesting and important question, upon the decision of which this controversy must turn.

So much of the act of Congress as is material to our present purpose is as follows:

Section 1 declares, that "Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States and Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment."

Sec. 3. "That in all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be dimin-

ished by the jury in proportion to the amount of negligence attributable to such employee: Provided, That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.''

Sec. 4. ''That in any action brought against any common carrier under or by virtue of any of the provisions of this act to recover damages for injuries to or the death of any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.''

It seems to be agreed, and we are of opinion rightly so, that this act was passed by Congress to constitute the law governing the liability of railway companies to their employees; that it was passed by Congress in pursuance of the commerce clause of the Constitution, which clothed it with authority and imposes upon it the duty to regulate commerce with foreign nations, among the several States and with the Indian tribes. Until a recent period Congress had not carried this power into execution, but it had been left to the control of the several States through their legislatures and courts. When Congress, however, did act upon the subject, its authority was complete and exclusive.

To the act, then, we must look for the law governing the liability of railroads and their employees *inter sese,* and in order to determine their relative privileges, duties and obligations. It in itself and of itself constitutes the sole and supreme law as to the subjects upon which it touches, and is not to be pieced out by reference to State legislation.

13

In *Mich. Cent. R. Co.* v. *Vreeland,* 227 U. S. 59, 33 Sup. Ct. 192, 57 L. Ed. 417, Mr. Justice Lurton, speaking for the Supreme Court said: "By this act, Congress has undertaken to cover the subject of the liability of railroad companies to their employees injured while engaged in interstate commerce. This exertion of a power which is granted in express terms must supersede all legislation over the same subject by the States." And speaking with reference to the police power of the State, the opinion continuing says: "No urgency for its use can authorize a State to exercise it in regard to a subject matter which has been confided exclusively to the discretion of Congress by the Constitution. . . . It therefore follows that in respect of State legislation prescribing the liability of such carriers for injuries to their employees while engaged in interstate commerce, this act is paramount and exclusive, and must remain so until Congress shall again remit the subject to the reserved police power of the States."

Indeed, counsel for defendant in error, in his brief, states the law upon the subject with propriety. "The act of Congress provides a complete system of liability, which, since the amendment of 1910, does not need to be pieced out, and, indeed, cannot be pieced out by resorting to the local statutes of the State of procedure, or that of the injury. The act is one which relates to the liability of railroad companies engaged in interstate commerce to their employees while engaged in such commerce. The power of Congress to deal with the subject comes from its power to regulate commerce between the States, and when exercised is exclusive of the law of the States."

The field having been occupied by Congress by the passage of the law which we have quoted, and the law which it has passed being exclusive of all others, it only remains to ascertain whether or not, in the record before

us, the judgment complained of has been reached in obedience to and conformity with the provisions of that law.

The objection to the first instruction given by the court at the instance of the plaintiff is not, we think, well taken. It states the law correctly and there was evidence to support it.

The second instruction given by the court over the objection of the railway company is as follows: ''The court further instructs the jury that knowledge by the plaintiff of the unsafe character or condition of the said roadway is of itself no defense to an action for injury caused to him thereby. Such knowledge, however, if the jury believe from the evidence that he had such knowledge, may be considered by the jury along with all the evidence in the case in determining whether the plaintiff was himself guilty of negligence, which contributed to produce the injury mentioned in the declaration; but the fact that the plaintiff may himself have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of contributory negligence, if such there were, which they may believe from the evidence was attributable to said plaintiff under the circumstances.''

Instruction ''A'' asked for by the plaintiff in error and refused by the court is as follows: ''The court instructs the jury that if they believe from the evidence that the existence of the cinder pile was known to the plaintiff, or that he had been working for the Southern Railway at Lawrenceville for more than a year, and that the cinders had been piled at the same place in the way described by the witnesses for many years prior to the accident, and that the plaintiff had failed to show that he had made complaint or objection on account of the cinder pile, then he assumed the risk of danger from the cinder pile, if

there was any danger in it, and the act of Congress approved April 22, 1908, permits this defense, and the jury should find their verdict for the defendant.''

The contention of plaintiff in error is that the court erred in giving instruction No. 2, as above set forth, and in refusing to give the instruction marked ''A'' as requested by it.

Instruction No. 2 deals with two propositions: First, the doctrine of assumed risk; and, secondly, with that of contributory negligence. With respect to the latter subject, the instruction seems to be in accordance with section 3 of the Employer's Liability Act, which declares, that although the employee may have been guilty of contributory negligence that fact shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.

The objection urged to the instruction is to the first clause of it which tells the jury that knowledge by the plaintiff of the unsafe character or condition of the roadway is of itself no defense to an action for injury caused thereby.

Under the Virginia law the instruction in this respect would be free from objection, for our Constitution, adopted in 1902, declares that, ''Knowledge, by any such railroad employee injured, of the defective or unsafe character or condition of any machinery, ways, appliances or structures, shall be no defense to an action for injury caused thereby,'' which wholly destroys the defense of assumed risk as applied to railroad employees. The language of the act of Congress is far otherwise. Section 4 declares that ''in any action brought against any common carrier under or by virtue of any of the provisions of this act to recover damages for injuries to or the death of any of its employees, such employee shall not

be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.''

The contention of defendant in error is that the risks assumed in contemplation of this act are such as are inherent in the work in which the employee is engaged, and such as cannot be foreseen and prevented by the exercise of ordinary care upon the part of the employee; that it was not intended to embrace such risks as flow from any negligent act on the part of the employer, or of any of its officers, agents or employees, or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment, but that as to such acts of negligence the employer is under an absolute liability by force of the first section of the act, and in support of this contention relies in part upon the precise form of the term used in the act, which does not speak of ''assumption of risks,'' but uses the phrase, the employee shall not be held to have ''assumed the risks.''   But this change merely in the order of the words used cannot have any important bearing, we think, on the construction of the statute; ''Assumption of risks,'' and ''assumed the risks'' of his employment being equivalent modes of stating an identical proposition.   It is a phrase which has acquired a definite technical meaning, nowhere more vigorously enforced than in the decisions of the Supreme Court of the United States.

In *Texas Pacific R. Co.* v. *Archibald,* 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188, the Supreme Court said: ''The elementary rule is that it is the duty of the employer to furnish applicances free from defects discoverable by the exercise of ordinary care, and that the employee has a right to rely upon this duty being perform-

ed, and that whilst, in entering the employment, he assumes the ordinary risks incident to the business, he does not assume the risk arising from the neglect of the employer to perform the positive duty owing to the employee with respect to appliances furnished. An exception to this general rule is well established, which holds that where an employee receives for use a defective appliance, and with knowledge of the defect continues to use it without notice to the employer, he cannot recover for an injury resulting from the defective appliance thus voluntarily and negligently used.''

In Words and Phrases, under the title ''Assumption of Risk,'' many authorities are collated, all of which confirm the doctrine as stated in the case just cited. It is a doctrine wholly distinguishable from that of contributory negligence, which is a breach of legal duty imposed by law upon the servant, however unwilling or protesting he may be, and differs from the assumption of risk which is not a duty but merely voluntary upon the part of the servant. *Dempsey* v. *Sawyer,* 95 Maine 295, 49 Atl. 1035.

In *Schlemmer* v. *Buffalo, R. & P. Ry. Co.,* 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681, dealing with the subject of assumption of risk, it is said: ''Whether an actual assumption by contract was supposed on grounds of economic theory, or the assumption was imputed because of a conception of justice and convenience, does not matter for the present purpose. . . . But, at the present time, the notion is not confined to risks of such negligence. (That is to say, negligence necessarily incident to the employment.) It is extended, as in this statute it plainly is extended, to dangerous conditions, as of machinery, premises, and the like, which the injured party understood and appreciated when he submitted his person to them. In this class of cases the risk is said to be assumed because a person who freely and voluntarily en-

counters it has only himself to thank if harm comes, on a general principle of our law.''

It is true that the employee does not assume the risk of negligence upon the part of his employer. This court so held in *Black* v. *Va. Portland Cement Co.,* 104 Va. 450, 51 S. E. 831 where it was said that ''failure on the part of the master to observe, for the protection of his servant, that reasonable degree of care which the circumstances of the particular case justly demand is actionable negligence, and is not within the influence of the doctrine of assumed risks.'' That case arose upon a demurrer to the declaration, which stated that the plaintiff was in the employment of the defendant, who was engaged in quarrying rock; that the defendant, whose duty it was to keep its quarry in a reasonably safe condition, knowingly permitted a stone to remain in a position from which it was liable to fall at any time, and that it did fall, on a day stated, upon the plaintiff who was ignorant of the danger, and in the exercise of due and proper care, and caution, by reason of which the injury complained of was inflicted. The demurrer to the declaration was overruled, and in the course of the opinion the court said: ''Every fact here stated is upon demurrer to be taken as true —that the rock which inflicted the injury was in a position from which it was liable to fall; that the master knew this fact, and negligently permitted it to remain; and that the servant, ignorant of the situation, remained at work in the quarry in the due course of his employment, and, while in the performance of his duty, received the fatal injury.'' The exact point of the decision being that the danger was known to the master and not known by or communicated to the employee.

Cases might be multiplied to any extent to show that the doctrine of assumed risks covers more than these

risks which are ordinarily incident to the business, and embraces the use of defective appliances, and work of almost every description where the employee with knowledge of the defect continues to use it without notice to the employer.

Upon this point see *Choctaw & Gulf Ry. Co.* v. *McDade,* 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96, where it is said, that "An employee assumes the risk of injury from defective appliances furnished by his employer only when the defect is known to, or plainly observable by, the employee."

When in section 3 Congress deals with contributory negligence, it forbids that defense wholly in cases where the common carrier has violated a statute enacted for the safety of its employees and such violation contributed to the injury or death of the employee. The same idea runs through section 4, and the doctrine of assumed risks is wholly excluded where the danger arose from the violation by the common carrier of a statute enacted for the safety of the employee. The language employed is plain and easy to be understood, and leaves, we think, except in the particular mentioned, the defense of assumption of risks in full force and vigor. The subject has been considered in numerous cases.

In *Freeman* v. *Powell,* (Tex. Civ. App.) 144 S. W. 1033, decided by the court of Civil Appeals of Texas, 144 S. W. 1033, an employee of an intrastate railroad company, engaged in preparing ice for use in passenger cars carrying interstate passengers, was engaged in interstate commerce; and hence the company's liability to him for personal injuries received in the work is governed by the act of Congress approved April 22, 1908, under which the assumption of risk is available, unless the injury was caused by the employer's violation of a statute enacted for the safety of employees. In that case,

the trial court found that the employee did not assume the risk arising from the failure to furnish certain needed appliances, but the appellate court was of opinion that, in the absence of a statute affecting the question, the employee, under the facts of the case, had assumed the risk. It is insisted, however, said the appellate court, that the trial court's conclusion to the contrary is correct, because of the act of the legislature of the State of Texas, which forbids the plea of assumed risks in certain cases. "If," said the court, "the above act applies the findings of the trial court have some support in the evidence; but we are of the opinion that the rights of the parties are to be determined by the provisions of the act of April 22, 1908, passed by the Congress of the United States." And section 4 is referred to, which we have already copied in this opinion. The Texas court referring to that section said as follows: "It thus appears that under the Federal statute a complaining employee to whom the act applies is not relieved from the operation of the ordinary rule of assumed risk, except in cases where there is a violation by the carrier of some statute enacted for the safety of an employee which has contributed to his injury or death, and of this there is no contention in this suit. In the respect just noted, the act of Congress conflicts with the State's statute which we have quoted. The power of Congress over interstate commerce is not an open question, and it extends to all agencies and instrumentalities by or through which it is carried on."

The point of resemblance between this case and the case before us will at once be observed. In both cases the State gave exemption from the operation of the doctrine of assumed risks in language which permitted a wider scope than that of the act of Congress upon the same subject.

In *Bowers* v. *Southern Ry. Co.*, 10 Ga. App. 367, 73 S. E. 677, it was held that, "the servant may assume the risk as in other employments, except as to such things as are violative of statutes enacted for the securing of the servant's safety."

In *Barker* v. *Kansas City M. & O. Ry. Co.*, 88 Kan. 767, 129 Pac. 1151, 43 L. R. A. (N. S.) 1121 the Supreme Court of Kansas held, that "the assumption of risk is a good defense to an action under this act, except when the violation by the carrier of some statute enacted for the safety of employees has contributed to the injury or death of the employee. And, when such defense is pleaded and supported by the evidence, it is the duty of the court to instruct thereon."

In *Central Vermont Ry. Co.* v. *Bethune*, 206 Fed. 868, 124 C. C. A. 528, where section 4 of the Employer's Liability Act was construed, it was held that the section "limited the abrogation of the doctrine of assumed risk in such cases to instances where the violation of an express statutory duty by the carrier was charged, and hence such doctrine was applicable to an action under the statute for the death of a railroad employee engaged in interstate commerce resulting from the alleged negligence of the railroad company in constructing its tracks too close together."

In *Gulf, Colorado, &c. Ry. Co.* v. *McGinnis*, 228 U. S. 173, 33 Sup. Ct. 426, 57 L. Ed. 785, the principal question before the court seems to have been as to the persons who could claim the benefit of the Federal Employer's Liability Act; but in the course of its opinion the court said: "It has also been assigned as error that the defense of assumed risk was, in legal effect, denied, because the court overruled a motion to instruct a verdict for the defendant. The defense of assumed risk was submitted to the jury under a full and fair general charge."

In *Mondou* v. *N. Y. N. H. & H. R. Co.*, 233 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N.S.) 44, the opinion delivered by Mr. Justice Van Devanter and concurred in by the entire court is most instructive as to many features of the case under consideration. He enumerates the departures from the common law made by portions of the act, and when he comes to that rule that involves the assumption of risks he says: "The rule that an employee was deemed to assume the risk of injury, even if due to the employer's negligence, where the employee voluntarily entered or remained in the service with an actual or presumed knowledge of the conditions out of which the risk arose, is abrogated in all instances where the employer's violation of a statute enacted for the safety of his employees contributed to the injury." In the course of his opinion he says: "True, prior to the present act, the laws of the several States were regarded as determinative of the liability of employers engaged in interstate commerce for injuries received by their employees while engaged in such commerce. But that was because Congress, although empowered to regulate that subject, had not acted thereon, and because the subject is one which falls within the police power of the States in the absence of action by Congress." *M. K. & T. Railroad* v. *Wulf*, 226 U. S. 570, 34 Sup. Ct. 135, 57 L. Ed. 355, 232 U. S. 248, *N. C. Railroad* v. *Zachary,* 34 Sup. Ct. 305.

In *Seaboard Air Line Railway* v. *Moore*, 228 U. S. 433, 33 Sup. Ct. 580, 57 L. Ed. 907, in an opinion of the court by the Chief Justice, it is said: "It is pressed upon our attention that the court decided and erred in deciding that the employers' liability law abolished, as to all cases coming under its provisions, the defense of assumption of risk, and, also, that a railroad employee injured in the course of his employment could avail of the benefits of

the statute, although at the time he sustained the injury he was not actually engaged in interstate commerce. But we think it is plain that the contentions last stated are without merit, and that the only even pretext afforded for their assertion arises from a misconception of the opinion below, which we think, despite its meagre and maybe inadequate examination of the case, nevertheless on its face rebuts the inferences which the contentions attempt to draw from it. It is unnecessary to recur to the text of the opinion to demonstrate the conclusion just stated, because in any event the contentions must be overruled, since the benefit of the defense of assumption of risk was accorded to the railway company at the trial, and the right of the plaintiff to recover was made dependent upon his establishing that at the time he was injured he was actually engaged in interstate commerce.''

Upon the whole case, we are of opinion that the court erred in giving instruction No. 2, as asked for by the defendant in error, and in refusing to give instruction ''A'', asked for by plaintiff in error. We think that the decisions to which we have referred and especially those of the Supreme Court of the United States, show very plainly that the fourth section of the Employer's Liability Act does not wholly do away with the defense of assumption of risk, but that it still constitutes a defense, except in those cases where the violation by the common carrier of some statute enacted for the safety of the employee contributed to his injury or death.

What the future may bring forth as to the true exposition of the statute remains in the breast of the gods; we can only deal with their recorded utterances.

The judgment must, therefore, be reversed, the verdict of the jury set aside, and the cause remanded for a new trial.

*Reversed.*