## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## NORFOLK AND WESTERN RAILWAY COMPANY V. TUCKER'S ADMINISTRATRIX.

### March 15, 1917.

1. MASTER AND SERVANT—*Federal Employers' Liability Act—Assumption of Risk.*—In an action by a servant's administratrix against his master, alleging that the servant's death was caused by the master's negligence, the declaration contained two counts, one setting out a cause of action under the laws of this State, and the other a cause of action under the Federal employers' liability act. The trial court required the plaintiff to elect upon which count she would proceed. As she chose to proceed under the latter, the defense of assumed risk was open to the master.

2. MASTER AND SERVANT—*Assumption of Risk—Safe Place to Work.*—A sand shoveler, an experienced workman, was killed by the falling of a clod of mixed clay and sand near the top of the bank beneath which he was working. It was a common thing in the course of work for clods to project from the face of the bank. If the men thought them likely to fall, they pried them down. If not, they let them alone. But they knew there was a certain amount of risk in the latter course, and they themselves were the sole judges of the cases in which they should take the risk.

   *Held:* That the accident resulted from a risk which was inherent in the employment and was perfectly well understood by the decedent and assumed by him.

Error to a judgment of the Circuit Court of Prince George county, in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*W. B. McIlwaine* and *J. M. Townsend,* for the plaintiff in error.

*Paul Pettit,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

Rufus Tucker was killed while at work for the Norfolk and Western Railway Company. In an action alleging that his death was caused by the company's negligence, his administratrix recovered the judgment under review.

The very simple work in which Tucker and other employes were engaged, consisted in cutting down a sand bank and loading the sand therefrom, by the use of wheelbarrows, into railroad cars. The sand bank was fifteen or twenty feet high. It was being operated by a number of men under the general charge and direction of a railroad section foreman, who visited the operation at more or less frequent intervals varying from once a day to two or three times a week. Another employee, doing the same work and receiving the same pay as Tucker and the other laborers there, was also the time-keeper and leader or local boss or foreman of the force.

The top of the bank is covered with clay or earth, and below this is the sand. To get the sand from the bank, the men go to the top and pry it off with crow-bars, thus causing the clay and earth and sand to "cave," or break away, and roll down to the foot of the bank. This process leaves the face of the bank at the top nearly perpendicular for several feet, sloping off thence with a considerable incline to the bottom, where the sand is shovelled into wheelbarows and thence conveyed along a plank runway to the cars. Some fifty or more men were thus employed, but they worked in small squads at intervals of a few feet from

made a sort of dent or scallop in the bank, thereby to a certain extent giving to each a separate working place, which was still further defined by the more or less cloddy clay and earth which the men discarded and threw to one side or the other as the several squads loaded the sand into their wheelbarrows.

A few days prior to the accident complained of, the top of the bank over one of these scallops had been pried off, and a clod of mixed clay and sand was left sticking on or in the face of the bank about four feet from the top. This clod did not present a dangerous appearance, and for that reason as well as because enough of the bank was already down to answer for the time being the purpose of the operation, it was left undisturbed for several days while a squad of hands, including Tucker, continued to load sand in the working place below it. This condition or situation was one which from the nature of the work was liable to arise at any time, and had frequently arisen in the previous course of the enterprise. After some days, but before the sand previously thrown down had all been loaded, the clod fell from the bank, breaking as it fell, and a piece of it struck Tucker, causing the injuries which are alleged to have resulted in his death.

There is some conflict in the evidence as to whether the clod projected from the bank, but none whatever as to the fact that it was plainly visible to the men below, and that none of them thought it was likely to fall. Tucker had worked for the defendant company for a number of years in this same employment, and was thoroughly familiar with the manner in which the operation was carried on. Being in point of service one of the oldest employees on the job, he was accustomed to "caving" the bank himself, the oldest hands generally being called on for that purpose. It was a part of the business of these men, known and recognized

by all of them, to look out and care for the safety of themselves and of each other, and to pry down the bank, as they did do, whenever it seemed to them dangerous, whether they needed to pry it down for more sand or not. This duty rested no more upon the leader or foreman above mentioned than it did upon each and every member of the force, and it was a duty which, in the absence of any understanding with the company to the contrary, would, in view of the character of the work, have rested upon them as a matter of law from the implied contract on the part of the workmen; but it was also expressly brought to their attention and recognized by them, as affirmatively appears from the evidence. The plaintiff's decedent, Rufus Tucker, had been frequently charged with it during the course of his long employment with the defendant company in this branch of service.

There were two counts in the declaration, one setting out a cause of action under the laws of this State, and the other a cause of action under the Federal employers' liability act. The trial court, upon the motion of the defendant, required the plaintiff to elect upon which count she would proceed, and she chose the latter, so that the doctrine of assumed risk is fully open to the railway company as a defense. *Southern Ry Co.* v. *Jacobs,* 116 Va. 189, 81 S. E. 99.

The only negligence charged in the declaration was the failure of the defendant "to use due and proper care to provide for said plaintiff's intestate and for its other employees a safe place for them to work in, and particularly * * * to use due and proper care to keep and maintain the walls and sides of its said sand pits and banks * * * clear of such rock and dirt as were liable to fall down and injure or kill" those employed at work in the bank.

All of the several assignments of error were waived at the hearing in this court except one based on the action of

the court in overruling the motion to set aside the verdict of the jury as contrary to the law and the evidence.

The motion should have been sustained. There is, as we conceive, no aspect of the case as disclosed by the evidence in which the verdict could be upheld. The accident resulted from a risk which was inherent in the employment and was perfectly well understood by the plaintiff's decedent. It was a common thing in the course of the work for clods to project from the face of the bank. If the men thought them likely to fall, they pried them down. If not, they let them alone. Of course they knew there was a certain amount of risk in the latter course, and they themselves were the sole judges of the cases in which they should take the risk. Prying the clods down or leaving them in place were the merest incidents of the work which they were employed to do. The principles of law exempting the master from liability under the facts of this case are too well settled to call for any discussion of them. They are fully discussed in many of the cases decided by this court, among them being *Jacoby Co.* v. *Williams*, 110 Va. 55, 65 S. E. 491, and *Fields* v. *Virginian Ry. Co.*, 114 Va. 558, 77 S. E. 501.

The judgment complained of must be reversed, and the cause remanded to the circuit court for a new trial to be had, if the plaintiff shall be so advised, in conformity with the views expressed in this opinion.

*Reversed.*