# Wytheville.

GAY'S ADMINISTRATOR v. SOUTHERN RAILWAY Co. AND ANOTHER.

June 11, 1903.

1. MASTER AND SERVANT—*Risks Incident to Employment—Risks to Crew of Yard Engine—Case at Bar.*—The crew of a yard engine, whose duty it is to remove disabled cars, assume the risks that are incident to the discharge of the duty from open and obvious causes. In the case at bar, a fireman on a yard engine was struck on the head and injured by a standard projecting from a disabled car standing on a siding. There was no defect in the engine, or track, and the claim of liability was based on the theory that the disabled car might have been put in a safer place than that at which it was left.

   *Held:* It was incident to a service of that description that broken cars might sometimes be put in the wrong place in the yard, and no sufficient notice given of that fact or of the defects in them, and hence the company was not liable.

Error to a judgment of the Circuit Court of the city of Alexandria, rendered December 6, 1900, in an action of trespass on the case, wherein the plaintiff in error was the plaintiff, and the defendants in error were the defendants.

*Affirmed.*

The opinion states the case.

*D. Harmon* and *C. W. Allen,* for the plaintiff in error.

*F. L. Smith; Munford, Hunton, Williams & Anderson* and *W. H. Payne,* for the defendants in error.

KEITH, P., delivered the opinion of the court.

The administrator of Dona Gay sued the Philadelphia, Wilmington & Baltimore Railroad Company and the Southern Railway Company for injuries resulting in the death of his intestate. The jury rendered a verdict subject to a demurrer to the evidence, and, the court having entered judgment for the defendants, the case is now before us upon a writ of error awarded the administrator.

The evidence proves, or tends to prove, the following facts: Dona Gay was on the 16th day of July, 1899, in the employment of the Southern Railway Company as one of the crew of a shifting engine in the yards of the company at Alexandria, which at this point extend from the station in a southerly direction for about one-half a mile, to a place designated in the evidence as the "Hill." There were at the time three tracks of the Southern Company, the most eastern of which was known as the "Main Track," that next to it as the "Valley Track," and the westernmost of the three as the "Bridge Track." Still further to the west, at no great distance, were the tracks of the Philadelphia, Wilmington & Baltimore Railroad. On the morning of the accident, Dona Gay, who had been continuously on duty from the preceding evening until 7 o'clock of that morning, had stopped work, thinking that his tour of duty had been completed; but, their being urgent need for his services, he was again summoned, and resumed his duties upon the yard engine. Some hours before the accident occurred a car loaded with lumber was taken from the yards of the Southern Railway and transferred, as was the custom, by means of connecting rails, to one of the tracks of the Philadelphia, Wilmington & Baltimore road. Soon thereafter, while engaged in the same duty of shifting cars from the one road to the other, the engine came in contact with a gondola, and drove it with violence upon a car laden with lumber. The gondola

"mounted" the lumber car, and it took more than an hour to remove the gondola and free the track. The load of lumber was confined by wooden standards placed in iron sockets, and one of these standards was so bent or broken that it projected over the side of the car. After the track had been cleared of the wreck of the gondola, the car loaded with lumber was taken by the Philadelphia, Wilmington & Baltimore Co., returned to the Southern Railway, and placed upon the track known as the "Valley Track," which, as we have already stated, is the one nearest to the main line of that road. The shifting engine and crew went on the side track in order to permit a passenger train to pass, and the engineer in charge then said that he would go out and get the bad loads from the "Valley Track" and put them on the repair track. Before the shifting engine started, the conductor proposed to Gay to get a drink of water. Gay got up on the engine first, drank, and then took his position between the tender and the engine.. He was looking around the corner of the cab, when he was struck on the left side of the head, just above his eye, and received an injury from which he died in a few days.

There is evidence which tends to show that the engine was moving at the time of the injury from twelve to twenty miles an hour; that the standard from the lumber car projected to within six or seven inches of the cab of the engine. There is evidence which also tends to prove that Gay, at the time of the injury, was watching the cars upon the valley track to ascertain which of them were out of repair, whether they had brakes on, and how many, and how many links and pins were needed in moving them to their proper position in the yard, all of which was in the line of his duty.

Do these facts, considered as upon a demurrer to the evidence, establish negligence of the defendants, or either of them?

The collision between the gondola and the lumber car, by

which the latter was disabled, was the result of negligence; but that act was not the proximate cause of the injury to the deceased, and no such claim is asserted. The lumber cars having been disabled and rendered unfit to be forwarded to its destination until it had been examined, its injuries repaired, and its load readjusted, it is not perceived that the Philadelphia, Wilmington & Baltimore Railroad was guilty of any wrong in returning it to the Southern Railway.

It is claimed that it might have been put in a safer place than that at which it was left on the valley track, because that track was next the main passenger track of the Southern Railway, and that it would have been safer to have placed it upon the bridge track. In the light of subsequent events, it is true that the accident complained of would not have happened if this had been done; but without going into a consideration of the evidence as to the reasons which it is alleged induced those who were charged with the duty of returning the lumber car to the Southern Railway track to select the valley track, instead of the bridge track, we cannot see that the act itself was, with respect to the shifting crew, negligent, or one from which it could reasonably have been expected that any injury would result. It is true that, with respect to passenger trains, an obstruction upon the valley track would be more dangerous than if it were upon the bridge track; but to the shifting crew the choice between the tracks would *a priori* seem to have been a matter of indifference.

It was the duty of the Southern Railway Company to exercise ordinary care to furnish a reasonably safe place in which, and reasonably safe instrumentalities with which, its employees should perform their duties. There is no suggestion that the engine and track were not in complete order, or that the engine was not manned by a competent and efficient crew. We have seen that the act of negligence by which the lumber car was disabled was not the proximate cause of the injury to Dona

Gay, and that the Philadelphia, Wilmington & Baltimore road, finding it disabled upon their track, was guilty of no negligence in restoring it to the Southern Railway, from which it had received it, and in placing it upon the valley track of that company.

It was necessary to take the lumber car to the shop where it could be overhauled, its load readjusted, and any injury which it had suffered could be ascertained and repaired. It was the business of the yard crew to remove disabled cars, and this duty involves risks which are incident to that service, and which are assumed by those who undertake to discharge them. It was necessary to remove this car, and, while the decedent may not have known of the precise danger to which he was exposed upon this particular occasion, he did know the general duties required of him, and the perils attendant upon their discharge.

In *N. & W. Ry. Co.* v. *Donnelly's Admr.,* 88 Va. 856, 14 S. E. 693, it is said: "It is well settled that when a servant enters upon an employment he accepts the service subject to the risks that are incident to it. An employee who contracts for the performance of hazardous duties assumes such risks as are incident to their discharge, from causes open and obvious, the dangerous character of which causes he had opportunity to ascertain. If a man chooses to accept employment, or continue in it, with a knowledge of the danger, he must abide the consequences, so far as any claim against his employer is concerned." *Robinson's Admr.* v. *Dininny,* 96 Va. 41, 30 S. E. 442; *Bertha Zinc Co.* v. *Martin's Admr.,* 93 Va. 791, 22 S. E. 869.

In *Yeaton* v. *Boston & Lowell R. Corp.,* 135 Mass. 418, the plaintiff had some experience in railroading; knew how to "brake" and make up cars. He, with others, were in the habit of taking damaged cars and putting them upon what was known as the "Hospital Track." Whenever there had been damaged cars during his employment, his attention was called to it, generally by the yard-master, who usually told the men that the

cars had been damaged, and that he wanted them put upon such and such a track.

The court says: "The plaintiff was forty-five years old, and, with his admitted experience, was thus of sufficient age and intelligence to understand the nature of the risk to which he was exposed by his employment. He knew that broken cars were to be moved and handled in the yard, and he voluntarily undertook and continued in a service which he knew included the moving and handling of them. He was aware of the danger which attends handling broken cars, and sought to guard against it by looking to see if the cars which he was to assist in moving were out of order. Notice was expected to be received in such cases, but he was also in the habit of looking out for himself. It was incident to a service of this description that broken cars might sometimes be put in the wrong place in the yard, and that sufficient notice of defects in them, and of their being put in the wrong place, might not be given. These are omissions of notice in respect to matters of detail, which cannot be given in advance, and which are not like an omission to give instructions to an inexperienced hand as to the general. dangers to which his service will expose him."

That case illustrates what we have already said—that it is the duty of the master to inform the employee of the nature of the risk and peril to be incurred in the course of his employment, but not as "to a special danger which springs out of a particular fact, which in its details cannot be anticipated."

"There was no negligence on the part of the defendant in sending broken cars for repairs to the yard where the plaintiff was at work. This was a proper place for them. There was no negligence in omitting to give notice to the plaintiff that broken cars were to be sent to this yard for repairs, and that his employment included the duty of handling and moving them. All this he knew already. What he did not know was that this particular car was broken, and that broken cars which were sent

for repairs might be found in that part of the yard where this car was." *Yeaton* v. *Boston & Lowell R. Corp., supra; Watson* v. *Railway Company,* 58 Tex. 434.

We are of opinion that the judgment of the Circuit Court of Alexandria City should be affirmed.

*Affirmed.*