Wytheville.

NORFOLK AND WESTERN RAILWAY COMPANY V. WHITEHURST.

June 12, 1919.

1.  MASTER AND SERVANT—*Proximate and Remote Cause—Negligence of Master—Unlighted Switch Target.*—A fireman had been employed on a yard engine for about a year prior to his injury, though he had worked only a few nights on that part of the yard on which he was injured. At night, while the engine was running at the rate of about six miles an hour, a pick, which was one of the necessary tools used in firing the engine, dropped off the engine to the ground, and the fireman jumped to the ground, recovered his pick, and ran after the engine to get on again. He ran into an unlighted switch target, was knocked to the ground, and his left hand was run over and cut off.

    *Held:* That the unlighted switch target was the proximate cause of the fireman's injury, and that the failure to light the target was negligence on the part of the company, which rendered it liable to him in damages.

2.  NEGLIGENCE—*Proximate Cause—"Foreseeableness."*—The "foreseeableness," or reasonable anticipation, of the consequences of a wrongful or negligent act, is not the measure of liability of the guilty party, though it may be determinative of the question of his negligence. When once it has been determined that the act is wrongful or negligent, the guilty party is liable for all the consequences which naturally flow therefrom, whether they were reasonably to have been anticipated or not; and in determining whether or not the consequences do naturally flow from the wrongful act or neglect, the case should be viewed retrospectively—that is to say, looking at the consequences, were they so improbable or unlikely to occur that it would not be fair and just to charge a reasonably prudent man with them? If not, he is liable. This is the test of liability; but, when liability has been established, its extent is to be measured by the natural consequences of the negligent or wrongful act. The precise injury need not have been anticipated. It is enough if the act is such that the party ought to have anticipated that it was liable to result in injury to others.

3.  APPEAL AND ERROR—*Conflicting Evidence—Conclusiveness of Verdict.*—Where a question upon which the evidence is conflicting,

is fairly submitted to the jury under proper instructions, the verdict of the jury is conclusive.

4. MASTER AND SERVANT—*Assumption of Risk—General Statement.*— A servant, when he enters into employment, assumes the risks that are usually and ordinarily incident to the employment in which he engages, and by continuing in the service without complaint he assumes such risks as become known to him during the course of his employment, or which are so open and obvious that they should be readily and easily discovered by a person of ordinary care and caution.

5. MASTER AND SERVANT—*Assumption of Risk—Unlighted Switch Target—Case at Bar.*—A servant does not assume the risk of every danger which may arise in the course of his employment. Unlighted switch targets cannot be said to be the usual and ordinary condition of railway yards at night, nor in the instant case could the plaintiff be charged with knowledge that the light was out on the target which struck him, as he had only been on that part of the yard a few nights, and did not even know where the switches were.

6. MASTER AND SERVANT—*Assumption of Risk—Unknown Dangers.* —A servant cannot be held to have assumed the risk of a dangerous or unusual condition, brought about by the negligence of the master, of which he was ignorant, and could not have known by the exercise of ordinary care.

7. MASTER AND SERVANT—*Assumption of Risk—Normally and Necessarily Incident—Ordinarily Incident.*—Defendant requested the following instruction: "By entering and continuing in the service the employee assumes the risks of dangers *normally and necessarily* incident to the occupation in which he voluntarily engages." The court substituted the word "ordinarily" for the words "normally and necessarily."

*Held:* That under the evidence in the instant case the plaintiff could not have been injured by the modification made in the instruction.

8. PLEADING—*Declaration—Unnecessarily Long.*—That a declaration is unnecessarily long is immaterial in view of section 3246 of the Code of 1904, which declares that "no action shall abate for want of form, where the declaration sets forth sufficient matter of substance for the court to proceed on the merits of the cause," and section 3272, which declares that "on a demurrer (unless it be to a plea in abatement), the court shall not regard any defect or imperfection in the declaration or pleadings, whether it has been heretofore deemed mispleading or insufficient pleading or not, unless there be omitted something so essential to the action or defense, that judgment, according

to the law and the very right of the cause, cannot be given."
These statutes have been in force since 1849.

Error to a judgment of the Law and Chancery Court of city of Norfolk in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Hughes, Little & Seawell* and *Theo. W. Reath,* for the plaintiff in error.

*Daniel Coleman, B. D. Willis, O. L. Shackleford* and *N. T. Green,* for the defendant in error.

Burks, J., delivered the opinion of the court.

Whitehurst sued the Norfolk and Western Railway Company for a personal injury and recovered a judgment for $15,000.00, which the trial court refused to set aside, and to that judgment this writ of error was awarded.

[1] Whitehurst had been employed as a fireman on a yard engine of the railway company, on its yard in the city of Norfolk for about a year prior to his injury, though he had worked only "a few nights" on that part of the yard on which he was injured. There are a number of tracks on the yard, and at the switch-point of each track connecting the siding with the lead track there is maintained a switch-target, standing between two and three feet above the ground, upon which there is a lamp which is kept lighted at night, displaying lights of different colors to indicate whether the switch is open or closed. At 12 o'clock on the night of July 22, 1917, Whitehurst got upon the yard engine to discharge his duties as fireman, and about half an hour thereafter, while the engine was running at the rate of about six miles an hour, a pick, which was one of the necessary tools used

in firing the engine, dropped off the engine to the ground, and Whitehurst jumped to the ground, recovered his pick and ran after the engine to get on again. He had the pick in his left hand, and, as he reached up to grab the hand-hold on the engine with his right hand, he was struck by an unlighted switch-target and knocked to the ground. His left hand was thrown upon the rail, and was run over and cut off. He claims that the unlighted switch-target was the proximate cause of his injury, and that the failure to light the target was negligence on the part of the company which renders it liable to him in damages. Hence this action.

It is admitted that both the plaintiff and the defendant were engaging in interstate commerce at the time of the injury, and that the case is controlled by the Federal employers' liability acts. (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. §§8657-8665] ; act April 5, 1910, c. 143, 36 Stat. 291.)

We have discussed the subject of proximate cause in a number of cases, and it is not to be expected that the discussion shall be repeated in every case of *tort* brought to this court. Each case must stand on its own facts, and the decision be regarded as another illustration of the principle involved. In the case at bar we have no difficulty in saying that the unlighted switch-target was the proximate cause (the *causa causans*) of the plaintiff's injury. The question which has given us concern is, whether the defendant was guilty of such negligence as entitled the plaintiff to recover of it for his injury.

[2] The "foreseeableness," or reasonable anticipation of the consequences of a wrongful or negligent act is not the measure of liability of the guilty party, though it may be determinative of the question of his negligence. When once it has been determined that the act is wrongful or negligent, the guilty party is liable for all the consequences which naturally flow therefrom, whether they were reasonably

to have been anticipated or not, and in determining whether or not the consequences do naturally flow from the wrongful act or neglect, the case should be viewed retrospectively; that is to say, looking at the consequences, were they so improbable or unlikely to occur that it would not be fair and just to charge a reasonably prudent man with them. If not, he is liable. This is the test of liability, but when liability has been established, its extent is to be measured by the natural consequences of the negligent or wrongful act. The precise injury need not have been anticipated. It is enough if the act is such that the party ought to have anticipated that it was liable to result in injury to others. *City Gas Co.* v. *Webb*, 117 Va. 269, 84 S. E. 645; *Pulaski Gaslight Co.* v. *McClintock*, 97 Ark. 576, 134 S. W. 1189, 1199, 32 L. R. A. (N. S.) 825; *Cooley on Torts* (Student's Ed.), p. 33; *Hill* v. *Winsor*, 118 Mass. 251; 25 *Harvard Law Review*, 245-6; 1 *Shear & Red* (5th ed.), Sec. 28, and cases cited. In *Christianson* v. *Chicago, etc., R. Co.*, 67 Minn. 94, 69 N. W. 640, one hand-car was following too closely upon another and a section man on the first car fell off and was injured by being struck by the car following. It was insisted that the company could not be held liable because it could not have been reasonably anticipated that the plaintiff would fall from the car. In reply to this contention, the court said: "What a man may reasonably anticipate is important, and may be decisive, in determining whether an act is negligent, but is not at all decisive in determining whether that act is the proximate cause of an injury which ensues. If a person had no reasonable ground to anticipate that a particular act would or might result in any injury to anybody, then, of course, the act would not be negligent at all; but, if the act itself is negligent, then the person guilty of it is equally liable for all its natural and proximate consequences, whether he could have foreseen them or not. Otherwise expressed, the law

is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated, was liable to result in injury to others, then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did happen. Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural and proximate; and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow. Bevan. Neg., p. 97; *Hill* v. *Winsor*, 118 Mass. 251; *Smith* v. *Railway Co.*, L. R. 6 C. P. 14. For citation of cases on this question, see 16 Am. & Eng. Enc. Law, p. 436, *et seq.* Tested by this rule, we think that it is clear that the negligence of those on the rear car was the proximate cause of plaintiff's injuries; at least, that the evidence justified the jury in so finding. Counsel admitted on the argument that if, by derailment or other accident, the front car had been suddenly stopped, and a collision and consequent injuries to plaintiff had resulted, the negligence of those on the rear car would have been the proximate cause. But we can see no difference in principle between the case supposed and the present case. The causal connection between the negligent act and resulting injury would be the same in both cases. The only possible difference is that it might be anticipated that the sudden stoppage of the car was more likely to happen than the falling of one of its occupants upon the track."

In *Isham* v. *Dow*, 70 Vt. 588, 591. 41 Atl. 585, 586. 67 Am. St. Rep. 691, 693, 45 L. R. A. 87, 92, it is said: "Care must be taken to distinguish between what is negligence and what the liability is for its injurious consequences. On the question of what is negligence, it is material to consider what a prudent man might have reasonably anticipated, but when negligence is once established, that consideration is entirely immaterial on the question of how far that neg-

ligence imposes liability." See also, *Smith* v. *Railroad Co.,* L. R. 6 C. P.; *Marsh* v. *Great Northern Paper Co.,* 101 Me. 489, 64 Atl. 844.

Undoubtedly, the primary object of the switch-targets and of the signals shown thereon was to give information to the crews operating engines and cars thereon of the condition of the siding, whether open or closed, and if, in consequence of the failure of the defendant to light a target, the engine had run into an open siding and there collided with another engine or car, causing injury to the plaintiff, it is conceded the defendant would have been liable. For the purpose of avoiding such injuries to that class of employees, the duty of the defendant to have the lamps on the targets lighted, was imperative, and the breach of that duty proximately resulting in an injury to such employee, would plainly have rendered the defendant liable to him for the resulting damage. The plaintiff was one of that class of employees to whom this imperative duty was owing for the purpose aforesaid. This purpose was a very important one, and he had the right to expect that so imperative a duty would be performed. Although the motive for lighting the targets was different, still the duty to light them remained, and that duty was owing by the defendant to the plaintiff. The plaintiff had a reasonable expectation that all lamps on the switch-target would be lighted at night, and that where there were no lamps there would be no targets, and this reasonable expectation was induced by the obligation resting upon the defendant to keep them lighted, and its consequent conduct in doing so. No matter what the motive was, there was an undertaking on the part of the defendant that it would keep the switch-targets lighted at night for the use of the plaintiff, and if this undertaking was violated by the defendant there was danger of injury to the plaintiff, not necessarily the specific injury suffered, but injury of some kind. If switches had to be

changed or lamps relighted, it was necessary for the plaintiff and others charged with those duties, to be upon the ground to discharge them, so that the defendant knew that the absence of lights would be a source of danger not only to those on the engines and cars, but also to those whose duties required them to be on the ground. The duty of the defendant to keep the lamps lighted for one purpose, coupled with its regular performance, was, in effect, a representation by the defendant to the plaintiff, on which the latter had a right to rely, that the lamps on the targets would be kept lighted each night, and as the plaintiff's injury proximately resulted from a reliance upon this representation, the defendant is liable for the consequences. Compare *Vickery* v. *New London R. Co.,* 87 Conn. 634, 89 Atl. 277.

The fact that the duty, in the case at bar, was one owing by the defendant to the plaintiff, distinguishes this case from *Chesapeake & Ohio R. Co.* v. *Rogers,* 100 Va. 324, 41 S. E. 732, relied upon by the railroad company.

[3] Rule 404 of the defendant declares: "No person of whatever rank or position must be permitted to absent himself from duty, or to change off with another for a trip or part of a trip, or day, without first obtaining permission from his superior," and from this it is argued that, as the fireman left the engine without the consent of the engineer, he has no right of recovery. The evidence of the plaintiff was to the effect that the rule was so uniformly disregarded as not to have been within the practical interpretation of the rule, or else it had been abandoned as to such acts. There was evidence to the contrary on behalf of the defendant, but the question was fairly submitted to the jury under instruction 8, given at the instance of the defendant, and their verdict is conclusive.

[4-6] One of the chief grounds of defense was that the plaintiff assumed the risk of the lights being out. A servant, when he enters into employment, assumes the risks

that are usually and ordinarily incident to the employment in which he engages, and by continuing in the service without complaint he assumes such risks as become known to him during the course of his employment, or which are so open and obvious that they should be readily and easily discovered by a person of ordinary care and caution. The servant does not assume the risk of every danger which may arise in the course of his employment. Unlighted switch-targets cannot be said to be the usual and ordinary condition of railway yards at night, nor can the plaintiff be charged with knowledge that the light was out on the target which struck him, as he testified that he had been on that part of the yard "just a few nights" and did not even know where the switches were. A servant cannot be held to have assumed the risk of a dangerous or unusual condition brought about by the negligence of the master, of which he was ignorant, and could not have known by the exercise of ordinary care. *Chesapeake & Ohio R. Co.* v. *Meadows*, 119 Va. 33, 89 S. E. 244. He did not know, and, under the circumstances, was not chargeable with knowledge of, the location of the switches, but, as we have hereinbefore pointed out, he had reasonable ground for believing that wherever there was a switch-target on the yard, it would be shown by a lighted lamp. Whether or not the plaintiff did assume the risk in the case at bar, was a question of fact for the jury, which was fairly submitted to them under proper instructions from the court, and their verdict is conclusive. *Chesapeake & Ohio R. Co.* v. *Meadows, supra,* and cases cited.

In *Southern R. Co.* v. *Jacobs,* 116 Va. 189, 81 S. E. 99, and *Jacobs* v. *Southern R. Co.,* 241 U. S. 229, 36 Sup. Ct. 588, 60 L. Ed. 970, so much relied upon by the defendant, the obstruction was not only open and obvious, but its existence and location was known to the plaintiff, and the accident occurred in the daytime. In *Gay* v. *Southern R. Co.,* 101

Va. 466, 44 S. E. 707, the plaintiff was employed to work on a yard on which broken and defective cars were placed which might cause him injury, and it became his duty, from the very nature of the work he was employed to perform, to keep a lookout to avoid injury from such cars. This he failed to do, and it was rightly held that he had assumed the risk. In *Baugham* v. *New York, etc., R. Co.,* 241 U. S. 237, 36 Sup. Ct. 592, 60 L. Ed. 977 (in which a writ of error was refused by this court), there were converging tracks on a barge, and the plaintiff, an infant, was crushed between a car he was ascending and a car standing on one of the tracks. The danger was open and obvious, and it was held that he had assumed the risk. In neither of these cases nor in the case of *Boldt* v. *Penn. R. Co.,* 245 U. S. 441, 38 Sup. Ct. 139, 62 L. Ed. 385, were the facts at all similar to those in the case at bar. Here the injury was in the night-time, and the plaintiff neither knew, nor was chargeable with knowledge, of the existence of the obstruction which caused his injury.

[7] The defendant also insists that the court erred in refusing to give its instruction 9-a as tendered by it and in amending said instruction as it did. The instruction as tendered was as follows: "If you believe from the evidence that at the time of the plaintiff's injury the locomotive of which he was fireman was shifting a car or cars loaded with undelivered merchandise which had come from a point or points beyond the limits of the State of Virginia, then the rights of the parties in this case are governed by the Federal employer's liability act of Congress of April 22, 1908, 35 Stat. 65. By entering and continuing in the service the employee assumes the risks of dangers *normally and necessarily* incident to the occupation in which he voluntarily engages. And an employee of mature years is taken to assume risks of this sort whether he is actually aware of them or not.

"Even risks arising out of the failure of the employer to exercise due care with respect of providing a safe place to work and suitable and safe appliances for the work are assumed by the employee when the defect and risk are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them."

The amendment consisted in the substitution of the word "ordinarily" for the words "normally and necessarily," italicized above. It is true that, in *Seaboard, etc., R. Co.* v. *Horton,* 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915 c 1, Ann. Cas. 1915 B, 475, Mr. Justice Pitney does use the words "normally and necessarily," but he was not there drawing any nice distinction between the meaning of words, nor contrasting the expression used with the word "ordinarily," nor can it be inferred that when he used the expression "normally and necessarily" he meant to exclude other appropriate terms. It is also true, as stated in *Boldt* v. *Penn. R. Co., supra,* that the servant at common law assumed *extraordinary* risks which were obvious, fully known to and appreciated by him, but the facts of the case at bar did not warrant any such instructions as to extraordinary risk; and it will be further observed that in discussing an instruction, that the servant assumed "the ordinary risks of his employment," it is said, in the case last cited, that the statement was "more favorable than plaintiff could properly demand." Upon the evidence in the case, we are unable to see how the plaintiff could have been injured by the modification made in the instruction.

[8] The declaration in this case is unnecessarily long. Section 3246 of the Code declares that "no action shall abate for want of form, where the declaration sets forth sufficient matter of substance for the court to proceed on the merits of the cause," and section 3272 declares that "on a demurrer (unless it be to a plea in abatement) the court shall not regard any defect or imperfection in the declara-

tion or pleading, whether it has been heretofore deemed mispleading or insufficient pleading or not, unless there be omitted something so essential to the action or defense that judgment according to the law and the very right of the cause, cannot be given." These statutes have been in force since 1849.

We find no error in the judgment complained of, and it is, therefore, affirmed.

*Affirmed.*

Sims, J., concurring.

I concur in the result of the majority opinion, but differ from the positions taken on some of the subjects treated in the opinion.

1. On the subject of "foreseeableness."

All of the authorities concur, as we know, in holding that the "foreseeableness" of which the law takes cognizance is not confined to the precise consequences of a negligent act or omission, but extends to any injurious consequences which are likely or reasonably possible to ensue in ordinary circumstances from the act or omission in question. 1 Thompson on Neg., sec. 59; Shearman & Redfield on Neg. (6th ed.), sec. 29. And the authorities are in accord in holding that if in the exercise of that duty of prevision which a defendant may owe in any given case to the plaintiff, the defendant might reasonably have foreseen that the consequence of the act or omission in question was likely or reasonably possible, in ordinary circumstances, to result in some injury to some one to whom the defendant owed a like duty of prevision as that owing to the plaintiff, and the plaintiff is injured because of such act or omission, the defendant is liable in damages to the plaintiff. Such "foreseeableness." as all of the authorities hold. is a test of liability of the defendant to the plaintiff in such case. 1 Thompson on Neg. 57, 59. Now there can be no such lia-

bility unless the act or omission in question was not only a negligent act or omission, but also an act or omission which was the proximate cause of the injury and damage. When we say, then, that such "foreseeableness" is a test of such *liability*, that is but another manner of saying that such "foreseeableness' is a test of the existence both of the negligence of the defendant and of that negligence having been the proximate cause of the injury and damage in question. Such "foreseeableness," therefore, furnishes a test available to ascertain in every case involving the duty of prevision, both whether the defendant has been negligent, and also whether such negligence was the proximate cause of the injury and damage which is the subject of the action. And upon the two inquiries the existence of such negligence or the existence of such proximate cause, the test of such "foreseeableness" is far more important and serviceable in its use as applicable to the latter than to the former inquiry. Proximate cause, being in its nature so subtile and elusive to the human mind, is in an especial way incapable of definition; and the "foreseeableness" aforesaid of the result of an act or omission has served as about the only practical test of the existence of proximate cause which has been found to be of any real service to the student of this difficult subject. 1 Thomp. Neg., secs. 27 to 57.

Therefore, I cannot concur in the position of the opinion of Judge Burks and in the statement in some of the quotations made therein to the effect that the "foreseeableness" aforesaid furnishes no test of proximate cause.

2. On the subject of the negligence of the defendant:

I would prefer to place the negligence of the defendant, which was the proximate cause of the accident, directly upon the ground of its breach of the duty which it owed to its servant, the plaintiff, to use reasonable care to provide and maintain a reasonably safe place for him to work. Such duty, under the facts of this case, required of the defend-

ant the exercise of reasonable care in the matter of having the target in question lighted and kept lighted. There is ample evidence in the record to sustain the view that there was a breach of such duty on the part of the defendant, and that that breach of duty was the proximate cause of the accident. Hence, as the jury might have so found, we must so find.

4. As to rule 404.

It would seem that this rule was plainly inapplicable in the instant case. The plaintiff was not "absent from duty," nor "changed off with another for a trip or day," but was on duty in his own place, and was, indeed, engaged in the discharge of the duties of that very place when the accident occurred in accordance with the testimony for plaintiff, which, of course, is conclusive upon us under the statutory rule on the subject.